# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:15cr46

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL RAY MILLS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pending before the Court is the Motion to Suppress [# 48].  Defendant

moves to suppress evidence discovered during a warrantless probation search of

Defendant and Defendant's residence. The Court **RECOMMENDS** that the

District Court **DENY** the Motion to Suppress [# 48].

## I.      Factual Background

Detective Joshua Hopper is a detective with the Henderson County Sheriff's

Office.  (Hr'g Tr. 6:17-19.)  Detective Hopper is currently assigned to the Direct

Enforcement Team: Narcotics. (Hr'g Tr. 6:23-25.)  On February 25, 2015,

Detective Hopper's office received a drug complaint from one of Defendant's

neighbors, Thomas Case, concerning Defendant and a third party.  (Hr'g Tr. 7:18-

8:6; 9:6-10:6, 25:7-18.)  Although another officer took the complaint, the

complaint was assigned to Detective Hopper. (Hr'g Tr. 10:18-20.) Detective

Hopper was already familiar with Defendant because he had arrested Defendant in

2010 and also conducted a traffic stop of Defendant. (Hr'g Tr. 11:6-15.) In

addition, Detective Hopper had previously visited Defendant's residence to inquire

about some stolen property. (Hr'g Tr. 11:16-12:2.)

Mr. Case reported possible drug activity by Defendant at his residence and

that Defendant might be in possession of firearms. (Hr'g Tr. 8:1-6; 9:6-15.) This

report contained specific information that Defendant had recently moved into the

residence from a camp trailer on the property after the death of his mother, that his

mother had had firearms in the residence, and that Defendant might now be in

possession of these firearms. (Hr'g Tr. 9:6-12; 28:15-31:6.) Mr. Case also

reported possible drug activity of a second individual, Bruce Glover. (Hr'g Tr.

8:3-20.) In addition to providing his name to the officers, Mr. Case provided his

phone number to the officers so that the officers could follow up with him. (Hr'g

Tr. 10:4-14.) After the case was assigned to Detective Hopper, he personally

spoke with Mr. Case several times. (Hr'g Tr. 10:25-10:5.)

In addition to the information provided by Mr. Case, property crime

detectives informed Detective Hopper that Defendant might be in possession or

receiving stolen property. (Hr'g Tr. 12:14-24.) These detectives received this

information regarding the potential stolen property from anonymous tips, not from

Mr. Case. (Hr'g Tr. 12:25-13:2.)

At the time of the complaint, Defendant was on supervised North Carolina

probation stemming from convictions for possession with intent to distribute and

maintaining a dwelling place or a vehicle for controlled substances. (Hr'g Tr. 58:5-

61:23; 92:4-6.) As a probationer, Defendant had to follow the regular conditions

of supervised probation specified in N.C. Gen. Stat. 15A-1343. (Hr'g Tr. 61:24-

62:9; Gov.'s Ex. 1; Gov.'s Ex. 2.) These conditions of probation include that

Defendant must not commit a criminal offense in any jurisdiction, not possess any

firearm, and not possess or control any illegal drug or controlled substance. (Hr'g

Tr. 62:15-63:12; Gov.'s Ex. 1; Gov.'s Ex. 2.) In addition, Defendant agreed to

submit at reasonable times to a warrantless search by a probation officer of his

person, vehicle, or premises. (Hr'g Tr. 63:7-12; Gov.'s Ex. 1; Gov.'s Ex. 2.)

Detective Hopper knew that Defendant was on probation at the time and

contacted Defendant's state probation officer, Tim Marshall. (Hr'g Tr. 10:21-24;

13:3-10; 64:5-8.) Officer Marshall is employed by the North Carolina Department

of Community Corrections. (Hr'g Tr. 57:2-6.) Detective Hopper advised Officer

Marshall of the complaint of possible drug activity and that Defendant might be in

possession of firearms. (Hr'g Tr. 13:13-19; 64:5-18.) In addition, one of the

property crimes detectives informed Officer Marshall about the possible stolen property. (Hr'g Tr. 13:20-23; 64:19-24.) Officer Marshall then made the decision to search Defendant's premises, and he authorized a warrantless probation search of Defendant and his residence. (Hr'g Tr. 15:19-16:5, 31:11-32:13; 68:6-8; 92:15-20.)

Officer Marshall coordinated the day and time of the search. (Hr'g Tr. 38:5-24.) Officer Marshall also requested assistance from the Henderson County Sheriff's Office to conduct the search. (Hr'g Tr. 38:19-20.) Officer Marshall typically requests the assistance of local law enforcement agencies to conduct warrantless probation searches eight to ten times a year. (Hr'g Tr. 66:6-15.) At approximately 9:30 a.m. on March 27, 2015, probation officers and members of the Henderson County Sheriff's Office initiated a search of Defendant and his residence. (Hr'g Tr. 17:14-19; 44:7-10; 69:13-15; 70:5-8; 94:18-22; 99:9-15.) Probation Officer Tracy Howell supervised the actual search because Officer Marshall had prior commitments for the day the search was scheduled. (Hr'g Tr. 16:24-17:11; 69:16-70:4.)

The probation officers first made contact with Defendant while the officers from the Henderson County Sherriff's Office remained in the area. (Hr'g Tr. 17:17-24; 18:8-19:5; 95:1-6; 96:12-17.) Officer Howell approached Defendant

with two other probation officers and informed Defendant that they were there to conduct a warrantless probation search. (94:25-95:6.) Officer Howell explained that they would be searching the residence and clarified with Defendant where he lived. (Hr'g Tr. 95:5-12; 95:23-96:1.) Defendant informed Officer Howell that Defendant lived in the single wide trailer on the property. (Hr'g Tr. 96:2-11.) Probation Officer Welch also patted Defendant down at the time. (Hr'g Tr. 96:25-97:4.)

After making contact with Defendant, the probation officers called in the remaining officers to assist in the search. (Hr'g Tr. 18:12-17.) Both probation officers and officers with the Sherriff's Office then conducted the search of Defendant's residence and the shed that was approximately 25 yards from the residence. (Hr'g Tr. 19:6-10; 95:13-22; 98:8-14.) Defendant was present for the search. (Hr'g Tr. 19:15-19; 99:16-19.) During the search, officers seized a loaded 357 revolver, ammunition, drug paraphernalia, and U.S. currency. (Hr'g Tr. 20:2-24.) After finding the revolver, the officers ran a check through the national crime information database and determined that the revolver was stolen from South Carolina. (Hr'g Tr. 21:5-13.)

After locating the stolen gun and the other contraband, Detective Hopper placed Defendant under arrest. (Hr'g Tr. 21:14-17.) Detective Hopper also

searched Defendant incident to his arrest and recovered a small plastic bag

containing a crystallized substance from his right, front watch pocket. (Hr'g Tr.

22:4-10.)   Although probation officers control the probation search, the Sheriff's

Office takes and seizes any contraband found and investigate any new crimes or

incidents that are triggered as a result of the search the probation officers initiate.

(Hr'g Tr. 86:19-87:3; 106:15-22.)

Subsequently, the Grand Jury indicted Defendant on one count of being a

felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Defendant

then moved to suppress the evidence seized during the warrantless probation

search.   The District Court referred the motion to this Court.  Having conducted an

evidentiary hearing, the Motion to Suppress is now before this Court for a

Memorandum and Recommendation to the District Court.

## II.    Analysis

North Carolina law mandates a number of conditions of probation to which a

defendant placed on probation must adhere.  United States v. Midgette, 478 F.3d

616, 622 (4th Cir. 2007).   One of the special conditions authorized by North

Carolina law provides that a probationer shall:

> Submit at reasonable times to warrantless searches by a probation
> officer of the probationer's person and of the probationer's vehicle and
> premises while the probationer is present, for purposes directly related
> to the probation supervision, but the probationer may not be required to

submit to any other search that would otherwise be unlawful.

N.C. Gen. Stat. § 15A-1343(b)(13).   Accordingly, North Carolina law allows for

the warrantless search of an individual on probation in North Carolina:

> subject to the specified criteria of reasonableness that (1) the search be
> conducted at a reasonable time; (2) the probationer be present during
> the search; (3) the search be conducted for purposes specified by the
> court in imposing probation; and (4) the search be "reasonably related"
> to probation supervision.

Midgette, 478 F.3d at 623.  And as the Fourth Circuit held in Midgette, warrantless

probation searches conducted in conformity with Section 15A-1343(b)(13) are

reasonable under the Fourth Amendment.  478 F.3d at 624.

Defendant, who was on probation in North Carolina at the time of the search

at issue, was subject to the warrantless search provision authorized by Section

15A-1343(b)(13) as a regular condition of his probation.  (Gov.'s Ex. 1; Gov. Ex

2.)  Defendant's probation officer authorized a warrantless search pursuant to

Section 15A-1343(b)(13) and the explicit conditions of Defendant's probation.

Probation Officer Marshall also had a particularized and objective basis to suspect

that Defendant was involved in criminal activity and to authorize the warrantless

probation search of Defendant's residence.  See Midgette, 478 F.3d at 625.

Probation Officer Marshall received a tip from local law enforcement that

Defendant might be in possession of a firearm, in possession of stolen goods, or

that illegal drug activity was occurring on Defendant's property. The tip came

from an experienced law enforcement officer who knew Defendant and who had

received specific information about Defendant from an identified source. Based on

the facts in this case, Probation Officer Marshall had a reasonable suspicion that, at

a minimum, Defendant was in possession of a firearm, and, thus, the search was

reasonable under the Fourth Amendment. Id.

In addition, the warrantless search was conducted in conformity with Section

15A-1343(b)(13). The search was conducted at a reasonable time of day,

Defendant was present during the search, the search was conducted for

probationary purposes, and the search was reasonably related to the probation

supervision. Although Defendant takes issue with the fact that local law

enforcement officers participated in the search, this fact does not render the search

invalid. As the Fourth Circuit explained in Midgette:

> In sum, these North Carolina cases hold that police officers may
> conduct the warrantless search of a probationer – indeed may even
> suggest the search – so long as the search is authorized and directed by
> the probation officer.

478 F.3d at 626.

Here, the evidence in the record demonstrates that while the local law

enforcement officers participated in the search, the search was authorized and

directed by the probation officers. Probation Officer Marshall authorized the

search. Because Probation Officer Marshall was unavailable on the day the search

was carried out, Probation Officer Howell supervised the March 27th search of

Defendant's residence. The probation officers first made contact with Defendant,

informed Defendant of their intention to conduct a probation search, and patted

Defendant down. The probation officers then called in local law enforcement

officers to assist in the search. As the Fourth Circuit and the North Carolina Court

of Appeals have made clear, this type of participation by the local law enforcement

in assisting probation officers in conducting a warrantless probation search does

not exceed the authorization of the North Carolina statute. See id.; State v.

Church, 430 S.E.2d 462, 466 (N.C. Ct. App. 1993); State v. Howell, 277 S.E.2d

112, 114 (N.C. Ct. App. 1981).

Finally, Defendant's contention that the search violated the Fourth

Amendment because there was no written request for assistance is without merit.

N.C. Gen. Stat. § 160A-288.2 is not applicable to this case and does not require

that there be a request in writing from the head of the state agency overseeing

probation requesting assistance from a local law enforcement prior to their

assisting probation officers carry out a warrantless probation search. The Court

finds that Section 160A-288.2 is not application to this case.  Accordingly, the

Court **RECOMMENDS** that the District Court **DENY** the Motion to Suppress

[# 48].

### III.    Conclusion

The Court **RECOMMENDS** that the District Court **DENY** the Motion to

Suppress [# 48].

Signed: July 21, 2016

Dennis L. Howell
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).